(822 P.2d 72)
No. 66,614

CITY OF OTTAWA, *Appellee*, v. STEVEN L. LESTER, *Appellant*.

Opinion filed November 27, 1991.

*William K. Rork*, of Topeka, for appellant.

*John W. Cole*, of Anderson, Byrd, Richeson & Flaherty, of Ottawa, for appellee.

Before ELLIOTT, P.J., GERNON, J., and PHILIP L. SIEVE, District Judge, assigned.

GERNON, J.: Steven L. Lester appeals from the district court's ruling affirming the municipal court's denial of his motion to withdraw his guilty plea. The basis of Lester's motion was his claim that the municipal court misinformed him concerning the consequences of entering a plea. We affirm.

We must first consider whether Lester's appeal should be dismissed as moot.

Our appellate decisions have addressed the doctrine of moot-ness on many occasions. " '[I]t is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the mat-ter in issue before the court. [Citations omitted.]' " *Kimberlin v. City of Topeka*, 238 Kan. 299, 301, 710 P.2d 682 (1985) (quoting *City of Roeland Park v. Cross*, 229 Kan. 269, 270, 623 P.2d 1332 [1981]).

"Mootness is a rule of policy under which a court will not render opinions in matters where judgment could have no practical effect on a then existing controversy. [Citation omitted.] The rule operates even in cases involving questions of great public interest. [Citation omitted.] However, since moot-ness does not affect the court's jurisdiction, the court will proceed to judg-ment whenever dismissal of an appeal adversely affects rights vital to the parties, even where its judgment will not be enforceable because of lapse of time or other changed circumstances. [Citations omitted.]" *Gonzales v. State*, 11 Kan. App. 2d 70, 70-71, 713 P.2d 489 (1986).

However, the appellate decisions have also cautioned: "An ap-peal will not be dismissed as moot unless it clearly and con-vincingly appears the actual controversy has ceased and the only judgment which could be entered would be ineffectual for any purpose and an idle act insofar as rights involved in the action are concerned." *Reeves v. Board of Johnson County Comm'rs*, 226 Kan. 397, 405, 602 P.2d 93 (1979); *Puritan-Bennett Corp. v. Richter*, 8 Kan. App. 2d 311, 315, 657 P.2d 589, *rev. denied* 233 Kan. 1092 (1983).

Here, if Lester should prevail and subsequently be found not guilty, he would be restored to the status of a first-time offender. This change in and of itself could alter the potential penalties given a subsequent prosecution and his liability under a habitual traffic offender proceeding. It can also be argued that his insur-ance availability or price could be affected by these proceedings. Given these considerations, we conclude that the appeal is not moot.

So far as the merits are concerned, Lester contends that he should have been permitted to withdraw his guilty plea because he was not informed that his driving privileges would be sus-pended. Lester maintains this violates K.S.A. 22-3210.

This court recently concluded:

"Under K.S.A. 22-3210, a trial court is required to inform the defendant of the direct penal consequences of a guilty plea before accepting the guilty plea. The trial court is not required to inform a defendant of the collateral consequences of a guilty plea, including the loss of certain civil rights or privileges." *Cox v. State*, 16 Kan. App. 2d 128, Syl. ¶ 1, 819 P.2d 1241 (1991).

In *Cox*, the defendant argued his guilty plea should be set aside because he was not informed of the plea's effect on certain "unspecified civil rights." 16 Kan. App. 2d 128. This court rejected the defendant's contention, concluding that:

"The trial court was not required to inform Cox of the loss of voting rights, jury eligibility, or right to hold office. Nor was it required to inform Cox that, should he receive parole, the parole officer could impose restrictions on him. These are collateral consequences which are not included in the mandates of K.S.A. 22-3210." 16 Kan. App. 2d at 130-31.

The federal courts have consistently held that the trial court is not required to inform a defendant of the collateral consequences of a guilty plea. See, *e.g.*, *United States v. United States Currency, the amount of $228,536.00*, 895 F.2d 908, 914-15 (2d Cir.) (civil forfeiture), *cert. denied* 495 U.S. 958 (1990); *United States v. Bouthot*, 878 F.2d 1506, 1511 (1st Cir. 1989) (state plea, possible exposure to federal prosecution; *Holmes v. United States*, 876 F.2d 1545, 1549 (11th Cir. 1989) (ineligibility for parole); *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989) (possible sentence enhancement following a subsequent conviction); *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir.) (possible exposure to federal prosecution), *cert. denied* 493 U.S. 831 (1989); *United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) (deportation); *United States v. Persico*, 774 F.2d 30, 33 (2d Cir. 1985) (possible exposure to RICO prosecution); *United States v. Suter*, 755 F.2d 523, 525 (7th Cir.) (treble damages in related civil action), *cert. denied* 471 U.S. 1103 (1985); *George v. Black*, 732 F.2d 108, 111 (8th Cir. 1984) (civil commitment proceedings); *United States v. King*, 618 F.2d 550, 552 (9th Cir. 1980) (civil income tax liability); *Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir. 1977) (revocation of parole); *Fruchtman v. Kenton*, 531 F.2d 946, 948-49 (9th Cir.) (deportation), *cert. denied* 429 U.S.

895 (1976); *Redwine v. Zuckert*, 317 F.2d 336, 338 (D.C. Cir. 1963) (undesirable discharge from military).

Various state courts also have concluded that a trial court is not required to inform a defendant of the collateral consequences of a guilty plea. See, *e.g., Minnifield v. State*, 439 So. 2d 190, 192 (Ala. Crim. App. 1983) (possible sentence enhancement following a subsequent conviction); *State v. Hatch*, 156 Ariz. 597, 599, 754 P.2d 324 (Ct. App. 1988) (sentence enhancement for subsequent conviction, DWI); *People v. McKnight*, 200 Colo. 486, 498, 617 P.2d 1178 (1980) (exposure to habitual traffic offender proceeding); *Mainiero v. Liburdi*, 214 Conn. 717, 725, 573 A.2d 1207 (1990) (ineligibility for sentence modification or intensive probation); *Blackshear v. State*, 455 So. 2d 555, 556 (Fla. Dist. App. 1984) (forfeiture of accumulated gain time); *Davis v. State*, 151 Ga. App. 736, 737, 261 S.E.2d 468 (1979) (possible exposure to federal prosecution); *State v. Jackson*, 362 So. 2d 1082, 1088 (La. 1978) (exposure to habitual offender charge); *Moore v. State*, 72 Md. App. 524, 526-27, 531 A.2d 1026 (1987) (enhanced sentence for subsequent convictions); *State v. Fournier*, 118 N.H. 230, 231, 385 A.2d 223 (1978) (exposure to habitual traffic offender proceeding); *State v. Heitzman*, 209 N.J. Super. 617, 622, 508 A.2d 1161 (1986), *aff'd* 107 N.J. 603, 527 A.2d 439 (1987) (loss of public employment); *Griffin v. Martin*, 278 S.C. 620, 621, 300 S.E.2d 482 (1983) (parole eligibility); *State v. Barton*, 93 Wash. 2d 301, 305, 609 P.2d 1353 (1980) (habitual criminal charge); *State v. Santos*, 136 Wis. 2d 528, 531, 401 N.W.2d 856 (Wis. App. 1987) (deportation); *Carson v. State*, 755 P.2d 242, 244 (Wyo. 1988) (deportation).

In *State v. Elliott*, 133 N.H. 190, 193, 574 A.2d 1378 (1990), the New Hampshire Supreme Court held that exposure to habitual traffic offender proceedings was a collateral consequence of a guilty plea to driving under the influence. In *Elliott*, Justice Souter reasoned:

"The possible significance of a guilty verdict for purposes of the habitual offender act is a classic example of a conviction's consequence that is collateral [citation omitted], in the sense that the consequence requires application of a legal provision extraneous to the definition of the criminal offense and the provisions for sentencing those convicted under it." 133 N.H. at 192.

The test of whether consequences are collateral has been defined as "whether the consequences imposed are a definite, immediate, and largely automatic result of the guilty plea." *United States v. Lott*, 630 F. Supp. 611, 612 (E.D. Va.), *aff'd* 795 F.2d 82. (1986).

The applicable Kansas statutory reference has been amended repeatedly in recent years. For some time prior to January 1, 1991, upon conviction, K.S.A. 1989 Supp. 8-1567(l) provided that "the court shall suspend, restrict or suspend and restrict the person's driving privileges as provided by K.S.A. 1988 Supp. 8-1014."

Effective January 1, 1991, K.S.A. 1990 Supp. 8-1567(n) provides that "the division, upon receiving a report of conviction, shall suspend, restrict or suspend and restrict the person's driving privileges as provided by K.S.A. 1989 Supp. 8-1014, and amendments thereto."

K.S.A. 1990 Supp. 8-1014(c) provides:

"(c) Except as provided by subsection (d) and K.S.A. 1989 Supp. 8-2,142, and amendments thereto, if a person has an alcohol or drug-related conviction in this state, *the division shall*:

"(1) On the person's first occurrence, suspend the person's driving privileges for 30 days or until the person has completed educational and treatment programs required by the court, whichever is longer, then restrict the person's driving privileges as provided by K.S.A. 1989 Supp. 8-1015, and amendments thereto, for an additional 330 days; and

"(2) on the person's second or a subsequent occurrence, suspend the person's driving privileges for one year or until the person has completed the treatment program required by the court, whichever is longer." (Emphasis added).

We conclude that the suspension of Lester's driving privileges was a collateral consequence of the guilty plea under our present statutory scheme and that the court was not required to advise him of these consequences. Lester's license was suspended by administrative action and not by the court. The portion of K.S.A. 1990 Supp. 8-1567 which requires license suspension and/or restriction is separate and distinct from the part of the statute specifying the other applicable penalties for this offense.

Affirmed.